IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DENNIS MACK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Case No. CIV-13-1079-HE |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for disability insurance benefits (DIB) and supplemental security income payments (SSI) under the Social Security Act. This matter has been referred to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B)-(C). The Commissioner has answered and filed the administrative record (hereinafter TR. ___). The parties have briefed their positions, and the matter is now at issue. For the reasons stated herein, it is recommended that the Commissioner's decision be **REVERSED AND REMANDED** for further proceedings consistent with this Report and Recommendation.

## PROCEDURAL HISTORY

Plaintiff's DIB and SSI applications were denied initially and on reconsideration at the administrative level. At his request, Plaintiff appeared at a February 10, 2012 hearing[1]

---

[1] The ALJ dismissed Plaintiff's request for hearing on March 25, 2011 for failure to attend the hearing. The Appeals Council vacated the ALJ's order of dismissal and remanded the case for further proceedings—resulting in a new hearing on February 10, 2012 (TR. 94-95, 18).

before an Administrative Law Judge, (ALJ), who issued an unfavorable decision on June 26, 2012 (TR. 18-29). Plaintiff appealed the ALJ's unfavorable decision to the Social Security Appeals Council, which found no reason to review the ALJ's decision (TR. 1-5). This judicial appeal followed.

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to two inquiries: whether the administrative decision was supported by substantial evidence and whether the correct legal standards were applied. *See Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010).

## THE ADMINISTRATIVE DECISION

In addressing Plaintiff's DIB and SSI applications, the ALJ followed the sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520; 416.920. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of January 5, 2009. (TR. 20). At step two, the ALJ determined that Plaintiff has severe impairments consisting of borderline intellectual functioning; status post remote stab wound in the abdomen; and status post gunshot wound to right shoulder. (TR. 20). At step three, the ALJ found that none of Plaintiff's impairments singly, or in combination, meets or equals any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR. 21).

At step four, the ALJ assessed Plaintiff's residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently. The claimant can sit for about 6 hours

> during an eight-hour workday and can stand and walk for about 6 hours during an eight-hour workday. The claimant can occasionally climb, balance, stoop, kneel, crouch, and crawl. The claimant can occasionally reach overhead with his right upper extremity. The claimant can frequently handle and finger with his right upper extremity. The claimant is to avoid concentrated exposure to extreme cold, dusts, fumes, gases, odors, and poor ventilation, and hazards, such as unprotected heights and heavy machinery. The claimant can understand, remember, and carry out simple, routine, and repetitive tasks. The claimant can respond appropriately to supervisors, co-workers, and usual work situations, but have no contact with the general public.

(TR. 22-23).

The ALJ then identified Plaintiff's past relevant work as that of a general laborer and determined that Plaintiff could not perform his past relevant work. (TR. 27). At step five of the sequential evaluation process, the ALJ determined, with the help of a vocational expert (VE), that Plaintiff could perform other jobs existing in significant numbers in the national economy such as housekeeper, automatic spinning lathe operator and label coder. (TR. 28). Thus, the ALJ determined that Plaintiff was not disabled.

## ISSUES FOR REVIEW

Plaintiff raises two adequately–developed issues. First, Plaintiff contends the ALJ erred at the third step of the sequential evaluation by disregarding the results of Plaintiff's IQ test and the opinion of the psychological medical consultant who administered the tests. Plaintiff further contends that the ALJ erred in failing to fully develop the record. Although Plaintiff also alleges that the ALJ erred in his credibility analysis, Plaintiff does not discuss this alleged error. Therefore, this proposed error is not adequately developed and does not warrant further consideration.

# ANALYSIS

The ALJ considered the Listings at 1.02 and 1.06 and determined that Plaintiff's physical impairments do not meet or medically equal either of these listings. Plaintiff does not challenge this finding.

Based on the opinion of the nonexamining medical source, the opinion to which the ALJ gave great weight, the ALJ should have considered both the Listings at 12.02 and 12.05. But the ALJ considered only the listing at 12.05:

> **12.05 Intellectual disability**: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied
>
> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
>
> B. A valid verbal, performance, or full scale IQ of 59 or less; OR
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; OR
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>
> 1. Marked restriction of activities of daily living; or
>
> 2. Marked difficulties in maintaining social functioning; or
>
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or

> 4. Repeated episodes of decompensation, each of extended
> duration.

20 C.F.R. pt. 404, subpt. P, Apx.1

Relying upon the opinions of a non-examining source, the ALJ concluded that Plaintiff's impairments did not meet or medically equal the requirements in Listing 12.05. As the ALJ correctly stated, the record is devoid of an opinion of a treating source. When the record does contain opinions of treating sources, those opinions are generally given the most weight in Social Security administrative proceedings. 20 C.F.R. § 404.1527(b)(2); 20 C.F.R. § 416.927(b)(2). The opinions of an examining source are generally given more weight than the opinion of a source who has not examined the claimant. 20 C.F.R. § 404.1527(b)(1); 20 C.F.R. § 416.927 (b)(1). Though no treating physician opinions are included in the record, there is a Psychological Report prepared by Melanie C. Talley, Ph.D., an examining medical source. (TR. 327-330). Dr. Talley reported that during a preliminary interview, Plaintiff's speech was "strange in enunciation to the degree that one might think he was not from the United States, i.e. it was frequently garbled and had an unidentifiable accent." (TR. 327). Dr. Talley recounted Plaintiff's explanation regarding the gunshot wound to his neck and opined that "[i]f he had an anoxic event, it could explain his cognitive and speech difficulties." (TR. 327). She stated that Plaintiff's "physical and/or orthopedic problems warrant closer examination." (TR. 329). Finally, Dr. Talley opined it appeared to her that "he may have suffered from of a neurological trauma as a result of being shot" and added that the possibility of neurological trauma "needs closer and more targeted evaluation to be confirmed." (TR. 329).

Dr. Talley administered the WAIS-IV test to measure Plaintiff's IQ. She noted that Plaintiff "exerted full effort on examination." (TR. 327). Plaintiff's full scale IQ was 55, a score in the range of mild mental retardation. Dr. Talley reported the scores of subtests were "extremely low." (TR. 328).

Dr. Talley summarized her findings:

> This patient's intellectual abilities were measured to be in the mild range of retardation. Apparently Mr. Mack has always functioned at a low level of occupational attainment. At this time, the patient is suffering from pain, which he says prevents him from working.
>
> In any event, it does not seem as though he has the cognitive ability to do any skilled work. There did not seem to be any problems regarding his memory and concentration abilities. Further, he likely would be able to persist at a job that was at his level of ability.

(TR. 329). Dr. Talley did not find Plaintiff capable of managing his own finances because of his cognitive impairment. (TR. 329). Dr. Talley concluded the report with her prognosis:

> Mr. Mack's overall prognosis for securing and maintaining employment that requires anything beyond physical or manual labor, i.e., that which is commensurate with his skill level, is thought to be poor.

(TR. 329). Taken together, these statements demonstrate Dr. Talley's assessment that Plaintiff's "level of ability" is limited to "physical or manual labor." [2] Because the ALJ determined at step four of the sequential evaluation that Plaintiff could not perform his past relevant work as "general laborer," (TR. 27), Dr. Talley's assessment, if accepted, would require the ALJ to find Plaintiff disabled at step four, if not at step three. But

---

[2] The ALJ found these statements to be conflicting. But taken together, the statements to which the ALJ refers, appear to be consistent.

6

despite the fact that Dr. Talley was an examining medical source, the ALJ gave her opinion only "some weight." (TR. 27).

Despite the results of objective standardized testing and the observations of the examining medical source, Dr. Talley, the ALJ relied primarily on the opinion of Burnard Pierce, Ph.D., a nonexamining state agency medical source, and concluded that Plaintiff "did not have a valid verbal, performance or full scale IQ of 59 or less." (TR. 21). In light of Dr. Talley's having stated that Plaintiff "exerted full effort" during the examination, Dr. Pierce's conclusion, adopted by the ALJ from the Psychiatric Review Technique form, is not supported by substantial evidence in the record as a whole. The ALJ gave Dr. Pierce's opinion "great weight." (TR. 26; TR. 332-343). Dr. Pierce indicated that the Listings at 12.02, Organic Mental Disorders, and 12.05, Intellectual Disability, should be considered. He also noted that "a medically determinable impairment is present that does not precisely satisfy the diagnostic criteria" of the Listings: "possible cognitive disorder due to gunshot wound." (TR. 332). This statement seems consistent with Dr. Talley's opinion regarding the possible effect of the gunshot wound on Plaintiff's cognitive abilities. In his notes, however, Dr. Pierce concluded, without support in the record, that Plaintiff's gunshot wound "did not impact his mental functioning." (TR. 343). The statements by Dr. Pierce are inconsistent. The opinions of Dr. Pierce and Dr. Talley deserve further consideration. On remand, the Commissioner will have the opportunity to order more tests or further consultative examinations.

Dr. Pierce also stated that Plaintiff's history "is not consistent with mental retardation." (TR. 343). The latter statement is based in part on Dr. Pierce's belief that Plaintiff "completed high school in regular classes." (TR. 343). The record, however, is

unclear as to whether Plaintiff attended regular classes or special classes for a learning disability. (TR. 265; 62). Whether Plaintiff was in special education classes was a factor affecting Dr. Pierce's conclusions regarding Plaintiff's cognitive abilities and is, therefore, deserving of further investigation and further development of the record. *See Baca v. Department of Health and Human Servs.*, 5 F.3e 476, 479-480 (10th Cir. 1993).

According to Dr. Pierce, the Listing at 12.02 should have been considered by the ALJ, but the ALJ did not address the requirements for this Listing. The Listing at 12.02 relates to organic mental disorders:

> **12.02 Organic Mental Disorders:** Psychological or behavioral abnormalities associated with a dysfunction of the brain. History and physical examination or laboratory tests demonstrate the presence of a specific organic factor judged to be etiologically related to the abnormal mental state and loss of previously acquired functional abilities. The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
>
> A. Demonstration of a loss of specific cognitive abilities or affective changes and the medically documented persistence of at least one of the following:
>
> 1. Disorientation to time and place; or
>
> 2. Memory impairment, either short-term (inability to learn new information), intermediate, or long-term (inability to remember information that was known sometime in the past); or
>
> 3. Perceptual or thinking disturbances (e.g., hallucinations, delusions); or
>
> 4. Change in personality; or
>
> 5. Disturbance in mood; or
>
> 6. Emotional lability (e.g., explosive temper outbursts, sudden crying, etc.) and impairment in impulse control; or

7. Loss of measured intellectual ability of at least 15 I.Q. points from premorbid levels or overall impairment index clearly within the severely impaired range on neuropsychological testing, e.g., the Luria–Nebraska, Halstead–Reitan, etc.; AND

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration; OR

C. Medically documented history of a chronic organic mental disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

On remand, the ALJ should consider both Listings, as suggested by Dr. Pierce. Additionally, the ALJ should consider whether Plaintiff's serious impairments, alone or in combination, meet or medical medically equal the Listings at 12.02 or 12.05. The ALJ may find it helpful to fully develop the record regarding Plaintiff's cognitive disorders,

how long they have been present, and, in the case of the Listing at 12.02, the precipitating factor of his disability.

## RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ and the pleadings and briefs of the parties, the undersigned magistrate judge finds that the ALJ's decision is not supported by substantial evidence in the record. Thus, it is recommended that the decision of the Commissioner be **REVERSED AND REMANDED** for further proceedings consistent with this Report and Recommendation.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. §636 and Fed. R. Civ. P. 72. Any such objections should be filed with the Clerk of the District Court by **November 13, 2014**. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED on October 31, 2014.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE